

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-23-00370-CR

BENJAMIN TAYLOR, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 403rd District Court
Travis County, Texas
Trial Court No. D-1-DC-23-500042, Honorable Brandy Mueller, Presiding

February 28, 2024

MEMORANDUM OPINION[1]

Before QUINN, C.J., and PARKER and DOSS, JJ.

Benjamin Taylor appeals his convictions for obstruction or retaliation through one issue. He contends that the trial court erred in sua sponte 1) redacting content from certain letters despite the agreement of the parties that their entirety was admissible and 2) barring the parties from identifying the offense with which he was charged when the letters were written. We affirm.

---

[1] Because this appeal was transferred from the Third Court of Appeals, we apply its precedent should it conflict with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

***Background***

At trial, the State alleged appellant committed obstruction or retaliation. Same was exemplified through a series of threatening letters directed at a potentially adverse witness and investigator. He wrote them while in custody on an aggravated assault charge.

Both the State and the defense agreed that 1) the full, unredacted letters should be admitted into evidence; and 2) the jurors should be told appellant had been jailed for "aggravated assault." The trial court disagreed, believing the prejudicial effect outweighed the probative value of that evidence. Thus, the parties were ordered to forego mentioning the nature of the crime, though they remained free to discuss the fact of appellant being jailed. The trial court also permitted them to admit redacted versions of the threatening letters. Appellant objected. He believed the offense was part of the "nucleus of operative facts . . . both parties agree that that's the nucleus of operative facts, and a judge is trying to control that."

In their respective opening arguments, the State and appellant mentioned the substance of the letters. The State alluded to the specific threats of violence therein and their repeated, consistent nature. In turn, appellant argued that the letters did not constitute real threats; rather, it was "acting-out behavior" and "bus stop talk."

The acting out and engaging in uncontrolled diatribe or "bus stop talk" served as the underlying theme of appellant's defense. Same purportedly derived from his anger about his being jailed on false assault charges and failure to take his appropriate medications. Furthermore, the theme continued through closing argument. There, defense counsel uttered such comments as: 1) "now you realize there's a bunch of

2

people who just can't control what comes out of their mouth, right? True or false. Well, if that's true, then you can acquit"; 2) "you realize that some people can't control the stuff that they're trying to put him in prison on, that's a good argument, and it does deserve to be made . . ."; 3) "[t]hey should have called the mental response team"; 4) "[y]ou know why we're acquitting this guy? Because the State didn't call their mental health team . . ."; 5) appellant was "clearly not on his meds as is dictated by everyone"; 6) "you have got a real intersection because the guy [is] not on his meds . . ."; 7) "[y]ou're free to make a distinction because every act has to be voluntary"; 8) "if you find that his talking was just uncontrollable, are we allowed to find that his talking was just uncontrollable and not a threat within the meaning of the law for which you are convicted of obstruction or retaliation, that is absolutely a finding you can make . . ."; and 9) "[w]e know he said it. We know they're his words. We know he wrote it. We know he intended it to go where it went. All of that stuff was done . . . [and] [t]he law allows absolutely for you to say this is not a threat within the meaning of the law."

### *Analysis*

Through his sole issue on appeal, appellant argues the trial court erred in redacting the letters and barring mention of "aggravated assault" despite the agreement of the parties otherwise. We overrule the issue for the following reasons.

First, the ground urged here implicating the rule of optional completeness went unmentioned below. Because the grounds underlying an objection at trial must comport with those raised on appeal, the matter of optional completeness was waived. *See Randig v. State*, No. 03-19-00083-CR, 2021 Tex. App. LEXIS 847, at *5-6 (Tex. App.—Austin Feb. 4, 2021, no pet.) (mem. op., not designated for publication) (so holding).

3

Second, the Third Court of Appeals said years ago that "[a]lthough the trial judge may rule on admissibility of evidence **on his own motion**, the initiative in excluding improper evidence rests with the party against whom the evidence is sought to be used." *Anderson v. McDonald*, 486 S.W.2d 123, 124 (Tex. Civ. App.—Austin 1972, no writ) (emphasis added). We can see a trial court's logic in questioning the rationality of telling jurors that the accused sat in jail for committing a violent offense when that same person is being tried for threatening violence from his jail cell. This seems especially so when appellants seldom hesitate to raise claims of ineffective assistance of counsel after being convicted. Nevertheless, we need not determine what the Third Court of Appeals meant in *Anderson*. Assuming *arguendo* the trial court erred, the supposed mistake was harmless.

Erroneous evidentiary rulings are non-constitutional error. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); TEX. R. APP. P. 44.2(b). As such, they do not result in reversal unless they affect the defendant's substantial rights. *Rosales v. State*, No. 03-15-00735-CR, 2017 Tex. App. LEXIS 10583, at *9 (Tex. App.—Austin Nov. 10, 2017, pet. ref'd) (mem. op., not designated for publication). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Id.* In assessing non-constitutional error, an appellate court must disregard the error if the court, "after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Id.* So too should it consider the entire record when making that assessment. *Id.*

Despite the restrictions imposed by the trial court, appellant remained capable of pursuing his defensive theme. Evidence of his missing medication was mentioned at trial.

4

His frustration with authorities failing to address "the validity to my claim" was also clear from the redacted letters.  Indeed, using all capital letters to apparently emphasize that frustration, he wrote in one letter:

> I HAVE BEEN SITTING IN THIS F . . . ING CELL FOR A QUARTER OF A YEAR NOW ON HEARSAY, HEARSAY THAT LEAD [sic] TO A WARRANT FOR MY ARREST IN AN HOUR.  I HAVE PUT PHYSICAL EVIDENCE ON THE LEAD INVESTIGATORS [sic] DESK NUMEROUS TIMES AND NOT A SINGLE FINGER IS LIFTED AGAINST THIS PROSTITUTION RING . . . .

So, the jury had before it evidence providing basis for appellant's contention that his threats to harm were not real but rather a frustrated rant akin to one heard from someone on the street suffering mental illness.  To that we add defense counsel's own acknowledgement, on behalf of appellant, that appellant wrote the letters.  Within this framework of the record, we can say, with fair assurance, that the trial court's decisions at issue did not influence the jury.  Redacting the letters and prohibiting the mention of the phrase "aggravated assault" did not impede appellant's defensive theme in any appreciable way.

We affirm the judgment of the trial court.


Brian Quinn
Chief Justice


Do not publish.